## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

ASHLEY BARNETT,

     Plaintiff,

v.

UNITED STATES OF AMERICA and
PAUL ROLSTON,

     Defendants.

Case No. 4:20-cv-449

## COMPLAINT FOR DAMAGES

Plaintiff sues Defendants and alleges as follows:

### Jurisdiction

1. This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1346 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1972) and 28 U.S.C. §2671, et. seq., Federal Tort Claims Act.

2. Plaintiff filed a claim under the Federal Tort Claims Act on July 2, 2018 (attached as Exhibit 1), which has not been honored and is deemed denied.

3. Plaintiff has exhausted her administrative remedies and obtained the relief that the administrative remedies could afford, to wit: an investigation.

4. Plaintiff has otherwise performed all acts precedent to bringing this suit or such acts have been waived.

## Parties

5.   At all times material hereto, Plaintiff ASHLEY BARNETT was a federal prisoner confined in FCI Tallahassee, in Tallahassee, Florida, which facility is within the Northern District of Florida.

6.   At all times material hereto, Defendant PAUL ROLSTON was a Physicians' Assistant at FCI Tallahassee, which facility is within the Northern District of Florida. Defendant Rolston acted in the course and scope of his employment.

7.   At all times material hereto, Defendant UNITED STATES OF AMERICA owned and operated a corrections facility known as FCI Tallahassee and were the employers of Defendant ROLSTON.

## Common Allegations of Fact

8.   In 2016, Ashley Barnett was a federal prisoner confined at Federal Correctional Institution (FCI) Tallahassee in Tallahassee, Florida.

### A. Abuse of Plaintiff by Paul Rolston

9.   During her time there, FCI Tallahassee Physician's Assistant (PA) Paul Rolston sexually assaulted Ms. Barnett and other women at his clinic.

10.   During Plaintiff's incarceration at FCI Tallahassee, PA Rolston would sexually assault women, including claimant, while conducting putative pelvic exams, Papanicolaou tests, and breast exams on female inmates.

11.   PA Rolston repeatedly performed unnecessary intrusive intimate

examinations with no medical purpose on female inmates at his clinic.

12. On October 17, 2018, Ashley Barnett went to see PA Rolston with a complaint of pain in her left arm and a family history of blood clots.

13. On her arrival, PA Rolston told Ms. Barnett she needed both pelvic and breast exams with a Papanicolaou test though she made no such request.

14. When Ms. Barnett questioned the need for these intrusive examinations based on her very different symptoms, PA Rolston responded "Sometimes even when you're looking in a field of lions you may find a zebra."

15. Ms. Barnett did not need, request, or want these intrusive examinations.

16. Nurse Jalandrian Reed was present to chaperone the exams. PA Rolston explained to Nurse Reed the exams he intended to conduct.

17. PA Rolston asked Ms. Barnett to fully undress and left the room.

18. Nurse Reed's face showed an expression of disgust and while PA Rolston was not in the room, Nurse Reed said to Ms. Barnett, "Just ignore my face."

19. Ms. Barnett responded, "You're probably thinking what I'm thinking." When the Nurse asked what Ms. Barnett was thinking, Ms. Barnett responded "He just creeps me out." PA Rolston returned to the room.

20. PA Rolston asked Ms. Barnett to lie down on the exam table and he pulled the disposable sheet down to her mid stomach, baring her breasts.

21. PA Rolston spent an inordinately long time examining each of Ms. Barnett's

breasts. PA Rolston slowly pressed up and down on each breast.

22.  Rolston moved right to left with his fingertips, touching plaintiff's nipples.

23.  Rolston took Ms. Barnett's hand and pressed it against parts of her breast, claiming to show her the difference in tissue in different parts of the breast.

24.  PA Rolston then pinched both Ms. Barnett's nipples, which Rolston later denied but which his chaperone said was a normal part of the exam.

25.  While the examination was going on, Nurse Reed was facing away from Ms. Barnett and PA Rolston the entire time, writing on a piece of paper.

26.  PA Rolston then told Ms. Barnett to scoot down and spread her legs.

27.  Once she complied, PA Rolston tapped two ingrown hairs in Ms. Barnett's pubic region and told her that she needed to shave with the hair grain.

28.  Ms. Barnett did not request any advice from Rolston about her pubic hair.

29.  PA Rolston then firmly touched Ms. Barnett's clitoris, spread her labia and inserted two fingers into her vagina. Ms. Barnett experienced PA Rolston "digging" inside of  her vagina, moving side to side and going deeper.

30.  PA Rolston told Ms. Barnett that she had a deep cervix. By this time, Ms. Barnett was certain that she was being sexually assaulted by PA Rolston.

31.  PA Rolston then removed his fingers and placed a speculum inside of Ms. Barnett's vagina. PA Rolston swabbed Ms. Barnett's vaginal walls.

32.  He then put a finger in plaintiff's rectum. He removed this finger, tapped

plaintiff's knee, and told her he was stepping out for her to get dressed.

33. Ms. Barnett felt violated and was made to feel she had to endure the assault from PA Rolston to access the medical care she needed for her arm.

34. Rolston returned, spread Plaintiff's legs and pressed his groin to her knee.

35. PA Rolston pressed his stethoscope against Ms. Barnett's chest.

36. As Rolston did so he again rubbed his groin against Ms. Barnett's knee.

37. PA Rolston then called Dr. Jimenez. When Dr. Jimenez arrived, PA Rolston never mentioned that he had done pelvic or breast examinations.

38. After this assault, Ms. Barnett reported PA Rolston's offensive acts and a Prison Rape Elimination Act (PREA) investigation was conducted.

39. On November 21, 2018 Ms. Barnett went to medical and was referred to PA Rolston, despite her report of her assault. When Ms. Barnett told staff that PA Rolston was not allowed to see her, she saw Dr. Jimenez instead.

40. Despite the PREA investigation, Rolston was still allowed to work around Barnett as a security officer with a loaded gun, making Barnett feel at risk.

41. Inmates Tonya Reid and Wendy Kernechel witnessed these events.

42. As a result of the abuse, Plaintiff suffered physical trauma, invasion of her person, great emotional harm, anguish, insecurity, self-revulsion, damage to self-esteem, shame, humiliation, anxiety, depression, loss of sleep, alienation from her husband, and an impaired ability to comfort her children.

43. Ms. Barnett knows many other women in the compound with similar complaints against PA Rolston. These include Beth Farber, Daphne Rodriguez, Connie Batchelor, Sonia Dodd, and Kalena Winston, and others who did not wish to be identified for fear of retaliation.

44. PA Rolston was frequently a topic of conversation among FCI Tallahassee inmates, along with a characteristic hand gesture as if probing a vagina with two fingers while stroking a clitoris with a thumb.

45. At the time of these events, FCI Tallahassee security officials were well aware of numerous other sexual assaults on inmates by prison employees.

46. Prison officials empowered and abetted its staff's sexually abusive acts.

47. FCI Tallahassee had an informal policy of turning a blind eye to abuse and leaving suspected abusers in a position to continue their abusive conduct.

48. Currently pending before this court are three cases involving sexual misconduct by Rolston, part of the Rolston cycle, and three cases involving sexual misconduct by Officer Jimmie Highsmith, part of the Highsmith cycle.  In both the Rolston cycle and the Highsmith cycle, each offender sexually abused roughly a dozen known women and probably more.  In both cases, BOP management was well-informed of the sexual misconduct after the early cases and left the offenders to prey on additional victims.

## Causes of Action

### I.   Cruel and Unusual Punishment (*Bivens*): Paul Rolston

49.  Plaintiff Barnett is entitled to relief against Paul Rolston because he violated her Eighth Amendment rights through coercive sexual acts involving sexual penetration, more fully set out in the Common Allegations above.

50.  Defendant Rolston intended to cause this harmful and offensive contact which was ostensibly part of his job but done for his sexual gratification.

51.  The sexual abuse of Plaintiff by Rolston was accomplished under color of law and subjected and caused Plaintiff to be deprived of rights, privileges or immunities secured by the Eighth Amendment to the U.S. Constitution.

52.  Rolston was emboldened to physically abuse inmates because the prior reports of sexual predations by him were never punished.

53.  Repeated sexual abuse is not part of the penalty criminal offenders pay for their offenses against society and constitutes a cognizable claim of cruel and unusual punishment under the Eighth Amendment.

54.  As a result of the sexual abuse of Plaintiff by Defendant Rolston, Plaintiff suffered physical trauma and invasion of her person, suffered and continues to suffer physical harm, emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks relief as noted below.

## II.     Federal Tort Claims Act Claim as to the United States

55. Plaintiff is entitled to relief against Defendant, United States of America because it breached its duty of care to Plaintiff, an inmate in its care and custody, as more fully set out in the Common Allegations above, in that it negligently operated and managed FCI Tallahassee by:

    a.  Hiring, retaining and entrusting Defendant Rolston who is, and was or should have been known to Defendant to be of such poor moral character, temperament, and disposition as to be unfit to be hired and retained as a medical provider with power over the Plaintiff.

    b.  Failing to implement such policies and procedures for the operation and management of FCI Tallahassee as would reasonably protect Plaintiff and others detained or incarcerated in the corrections facility from Defendant Rolston or other predatory corrections facility employees.

    c.  Failing to properly supervise, investigate, and review the operation and management of the corrections facility, its medical operations and its security and investigative personnel, and the activities and performance of Defendant Rolston as an employee.

    d.  Failing in the course of its investigation of Rolston's sexual abuse of Barnett to protect numerous other female inmates abused by Rolston in much the same way as he abused the Plaintiff.

    e.  Failing in the course of its investigation of the sexual abuse of other inmates to protect subsequent victims like Barnett.

56. The negligence of Defendant United States of America was wrongful as a tort under the law of Florida and of the United States and without excuse or justification under any applicable state or federal statute or rule.

57. As a result of the wrongful acts of Defendant United States of America, Plaintiff suffered physical trauma and invasion of her person, suffered and

continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to her self-esteem and self-worth, shame and humiliation.

WHEREFORE, Plaintiff seeks relief as noted below.

### III.    Federal Tort Claims Act (Battery) as to Defendant United States

58. Plaintiff is entitled to relief against the United States of America because Defendant Rolston sexually battered her under the color of law, as more fully set out in the Common Allegations, above.

59. Defendant Rolston performed deliberate sexual acts on Plaintiff without her freely-given consent and such acts were wrongful as a tort under the law of Florida and of the United States and without justification or excuse under any applicable state or federal statute or rule.

60. In committing the abuse, Defendant Rolston was acting within the course and scope of his employment with Defendant United States of America, using the powers given him by his employers.

61. As a result of the abuse by Defendant Rolston, Plaintiff suffered physical trauma, invasion of her person, suffered and continues to suffer great emotional harm, anguish, insecurity, self-revulsion, damage to self-esteem, shame and humiliation, anxiety, depression, loss of sleep, alienation from her husband, and an impaired ability to comfort her children.

WHEREFORE, Plaintiff seeks relief as noted below.

## **Prayer for Relief**

WHEREFORE, the Plaintiff respectfully seeks judgment as follows:

    A. That the Court assume jurisdiction over this action;

    B. Declare that the acts and omissions described herein violated Plaintiff's

       rights under the Constitution and Laws of the United States and Florida;

    C. Award compensatory damages against each of the defendants herein;

    D. Award punitive damages against Individual Defendants under federal law;

    E. Provide a trial by jury on all issues so triable;

    F. Such further relief as the Court deems just and proper.

               Respectfully Submitted,   *s/James V. Cook*
                                            JAMES V. COOK, ESQ.
                                            Florida Bar Number 966843
                                            Law Office of James Cook
                                            314 West Jefferson Street
                                            Tallahassee, FL 32301
                                            (850) 222-8080; 561-0836 fax
                                            cookjv@gmail.com

                                            RICHARD E. JOHNSON, ESQ.
                                            Florida Bar Number 858323
                                          Law Office of Richard E. Johnson
                                            314 West Jefferson Street
                                          Tallahassee, Florida 32301
                                          (850) 425-1997; 561-0836 fax
                                          rick@rej-law.com

                                            Attorneys for Plaintiff

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Bureau of Prisons<br>Southeast Regional Office<br>3800 North Camp Creek Parkway S.W., Bldg. 2000<br>Atlanta, GA 30331-6226 | ASHLEY BARNETT, # 60509-018<br>c/o James Cook, Richard Johnson, Attorneys<br>314 West Jefferson Street<br>Tallahassee, FL 32301 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY   ☒ CIVILIAN | 03/09/1989 | DIVORCED | 10/17/2018 | 10 A.M. |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Exhibit A, attached hereto.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

n.a.

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

n.a.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Exhibit A, attached hereto

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
| See Exhibit A, attached hereto. | |

| 12. (See instructions on reverse). | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
| 0.00 | 5,000,000 | | 5,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *Ashley Barnett* | 850-222-8080 | 9.9.19 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

95-109

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property.

15. Do you carry accident Insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number. ☒ No

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible? ☐ Yes ☒ No   17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code). ☒ No

## INSTRUCTIONS

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  *Authority:*  The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention:  Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

# Exhibit A

**Claim for Injury by Ashley Barnett, Fed. Reg. No. 60509-018**

**Field 6: Date and Day of Accident.** Incidents occurred during her incarceration in Tallahassee on October 17, 2018.

**Field 7: Time.** Around 10:00 AM.

**Field 8: Basis of Claim**

(a)  In 2016, Claimant Ashley Barnett was incarcerated and sent to FCI Tallahassee. Throughout her time there, FCI Tallahassee Physician's Assistant Paul Rolston sexually assaulted Ms. Ashley Barnett and other female inmates in his clinic office.

(b)  During the course of her incarceration at FCI Tallahassee, PA Rolston would assault women, including claimant, while conducting putative pelvic exams, Papanicolaou tests, and breast exams on female inmates, including exams that were not necessary and including inmates who were not formally scheduled in his clinic office.

(c)  On October 17, 2018, Ashley Barnett went to see PA Rolston due to a pain in her left arm and a family history of blood clots. PA Rolston claimed that Ms. Barnett needed both pelvic and breast exams with a Papanicolaou test. When Ms. Barnett questioned the need for these examinations based on her symptoms, PA Rolston responded that "Sometimes even when you're looking in a field of lions you may find a zebra." Ms. Barnett did not need, request, or want these exams.

(d)  Nurse Reid was brought into the examination room to chaperone the exams. PA Rolston explained to Nurse Reid the exams that he would conduct. PA Rolston then asked Ms. Barnett to become fully nude and left the room. The nurse looked disgusted and while PA Rolston was not in the room, the Nurse said to Ms. Barnett, "Just ignore my face." Ms. Barnett responded, "You're probably thinking what I'm thinking." When the Nurse asked what Ms. Barnett was thinking, she responded that "He just creeps me out." PA Rolston then returned to the room.

(e)  PA Rolston asked Ms. Barnett to lie down and pulled the disposable sheet down to her mid stomach. PA Rolston spent about 10 minutes examining each breast. PA Rolston slowly pressed up and down on each breast. PA Rolston moved right to left with his fingertips and grazed Ms. Barnett's nipples. PA Rolston took Ms. Barnett's hand and pressed it against parts of her breast, claiming to be showing her the difference in the tissue in different parts of the breast. PA Rolston then pinched Ms. Barnett's nipples. When PA Rolston had examined both breasts, he made Ms. Barnett lift her arms so that he could measure the difference between her painful and non-painful arms. Ms. Barnett was still entirely nude as PA Rolston did these measurements and her breasts were exposed. Nurse Reid had been facing away from Ms. Barnett and PA Rolston the entire time, writing on a piece of paper.

(f)  PA Rolston put the disposable sheet back over Ms. Barnett's breasts and told her to scoot down and spread her legs. Once she was in position, PA Rolston tapped two ingrown hairs in Ms. Barnett's pubic region and told her that she needed to shave with the hair grain to avoid future ingrown hairs. PA Rolston then touched Ms. Barnett's clitoris, spread her labia and inserted two

fingers into her vagina. PA Rolston began "digging" inside of Ms. Barnett's vagina, moving side to side and going deeper. PA Rolston told Ms. Barnett that she had a deep cervix. Ms. Barnett felt that she was being sexually assaulted by PA Rolston.

(g) PA Rolston then removed his fingers and placed a speculum inside of Ms. Barnett's vagina. PA Rolston swabbed Ms. Barnett's vaginal walls. He then put a finger in Ms. Barnett's rectum. He removed this finger, tapped Ms. Barnett's knee, and told her that he was stepping out for her to get dressed. Ms. Barnett felt violated and was made to feel she had to endure the assault from PA Rolston to access the medical care she needed for her arm.

(h) When PA Rolston returned, he spread Ms. Barnett's legs and placed his groin on her knee. He unbuttoned her top t-shirt to listen to Ms. Barnett's heart with a stethoscope and examine her ears. As PA Rolston did so he rubbed his groin against Ms. Barnett's knee. PA Rolston then returned to his desk chair and spread his legs very widely, pushing his groin in Ms. Barnett's direction.

(i) PA Rolston then called Dr. Jimenez. After Dr. Jimenez arrived, PA Rolston never mentioned the pelvic or breast examinations.

(j) After this assault, Ms. Barnett reported PA Rolston and a Prison Rape Elimination Act (PREA) investigation was conducted.

(k) On November 21, 2018 Ms. Barnett went to medical and was referred to PA Rolston, despite her report of her assault. When Ms. Barnett told staff that PA Rolston was not allowed to see her, she saw Dr. Jimenez instead.

(l) Ms. Barnett knows many other women in the compound with similar complaints against PA Rolston. These include Beth Farber, Daphne Rodriguez, Connie Batchelor, Sonia Dodd, Danielle Thibault, and Kalena Winston; others did not wish to be identified.

(m) Despite the PREA investigation, PA Rolston was still allowed to work around Barnett. PA Rolston was allowed to drive the perimeter truck with a loaded gun, making Barnett feel very threatened. Tonya Reid and Wendy Kernechel witnessed this event.

**Field 10: Extent of Injury**

Physical pain and suffering; mental distress.

**Field 11: List of Witnesses**

| Alexander, Charnesha | c/o attorney |
|---|---|
| Barnett, Ashley, 60509-018 | c/o attorney |
| Batchelor, Connie, 34810-001 | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Cleary, Patricia | c/o attorney |
| Dodd, Sonia, 32711-018 | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Farber, Beth, 67832-018 | 6303 County Road 500, Wildwood, FL 34785, 352-689-7390 |

| | |
|---|---|
| Jimenez, J., MD | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Kernechel, Wendy, 14679-078 | c/o attorney |
| Li, Xinyu Daniel, MD | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Lnu, Felicia | PREA Coordinator. 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Morton, Michelle | c/o attorney |
| Peoples, fnu, Officer | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Reid, fnu, Nurse | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Reid, Tonya | 1063 Erskine Road, Anderson, SC 29621, 864-219-0466 |
| Reilly ,fnu, MD | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Rivera, Steven, Lt. | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Rodriguez, Daphne, 46806-074 | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Rolston, Paul, PA | c/o attorney |
| Thibault, Danielle, 48741-074 | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |
| Winston, Kalena, 43416-013 | 501 Capital Circle NE, Tallahassee, FL 32301, 850-878-2173 |